Mr. Barry L. Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107, of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted various similar measures, some of which this office rejected due to ambiguities in the text of your proposed amendments. See Ops. Att'y Gen. Nos. 2003-328, 2003-307, 2003-295, 2003-275, 2003-258, 2003-245, 2003-232, 2003-204, 2003-169, 2003-026, 2003-008, 2002-346, 2002-335, 2002-325, 2002-308, 2002-293, 2002-272, 2002-262, 2002-242, 2002-227, 2002-208, 2002-118, 2002-102, 2002-077, 2002-042, 2002-026, 2002-001, 2001-380, 2001-358, 2001-341, 2001-173, 2001-110, 2001-095 and 2001-074. This office has revised and certified popular names and ballot titles for five similar measures, as evidenced by Ops. Att'y. Gen. Nos. 2003-351; 2003-054; 2002-140; 2001-196; and 2001-129. After my last certification (in 2003-351), you have made additional changes to your measure and have submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT AUTHORIZING NONPROFIT ORGANIZATIONS INCORPORATED IN THE STATE TO OPERATE BINGO AND RAFFLES AS A LOCAL BALLOT OPTION; AND BUSINESSES PERMITTED TO SELL ALCOHOLIC BEVERAGES FOR ON-PREMISES CONSUMPTION TO OPERATE GAMBLING ACTIVITIES AS A LOCAL BALLOT OPTION
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING (BEGINNING NINETY (90) DAYS AFTER PASSAGE OF THIS AMENDMENT), ANY NON PROFIT ORGANIZATION INCORPORATED IN ARKANSAS TO OPERATE BINGO AND RAFFLES UPON VOTER APPROVAL AS A LOCAL BALLOT OPTION; AUTHORIZING (BEGINNING NINETY (90) DAYS AFTER PASSAGE OF THIS AMENDMENT), ANY BUSINESS PERMITTED TO SELL ALCOHOLIC BEVERAGES FOR ON-PREMISES CONSUMPTION TO OPERATE GAMBLING DURING PERMITTED HOURS OF ALCOHOLIC BEVERAGE SALES UPON VOTER APPROVAL AS A LOCAL BALLOT OPTION, BUT EXCLUDES BUSINESSES PERMITTED TO SELL ONLY BEER AND/OR WINE AND PRIVATE CLUBS; EACH OF THE ABOVE SIGNIFICANTLY CHANGING THE LOTTERY PROHIBITION CONTAINED IN ARKANSAS CONSTITUTION, ARTICLE 19, SECTION 14; AUTHORIZING THE STATE TO IMMEDIATELY PERMIT OR LICENSE THE OPERATION OF BINGO AND RAFFLES OR GAMBLING, AS APPLICABLE, UPON VOTER APPROVAL AS A LOCAL BALLOT OPTION; ALL MATTERS CONCERNING THE LOCAL BALLOT OPTION NOT SPECIFICALLY PROVIDED HEREIN SHALL BE IN ACCORDANCE WITH THE INITIATIVE AND REFERENDUM LAWS OF THIS STATE APPLICABLE TO CITIES AND COUNTIES, RESPECTIVELY; INVESTING THE GENERAL ASSEMBLY WITH POWER TO REGULATE, LICENSE AND TAX BINGO, RAFFLES AND GAMBLING UNLESS PROVIDED FOR DIFFERENTLY IN THIS AMENDMENT; LEGALIZING THE SHIPMENT OF GAMBLING DEVICES INTO THE STATE IF DULY REGISTERED, RECORDED AND LABELED PURSUANT TO FEDERAL LAW; DEFINING" BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY; DEFINING "RAFFLE" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE BUT EXCLUDING MONEY AS A PRIZE; DEFINING "GAMBLING" AS THE RISKING OF MONEY BETWEEN PERSONS WHERE ONE MUST BE LOSER AND THE OTHER GAINER WITH GAMES OF CHANCE, SKILL AND ANY COMBINATION THEREOF, INLCUDING [SIC] BUT NOT LIMITED TO GAMES USING ANY KIND OF ROULETTE WHEEL, SLOT MACHINES OF ANY KIND, GAMING TABLES OF ANY KIND FOR THE USE OF CARDS AND DICE USED IN ANY MANNER, BUT EXCLUDING THE OPERATION OF A LOTTERY, BINGO AND RAFFLES; REQUIRING THE GENERAL ASSEMBLY TO MAKE ALL OTHER AND FURTHER LAWS, RULES AND REGULATIONS FOR THE ENFORCEMENT OF THE AMENDMENT; MAKING THE AMENDMENT EFFECTIVE IMMEDIATELY UPON PASSAGE EXCEPT AS OTHERWISE PROVIDED IN THE AMENDMENT; MAKING THE AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THE AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section 1(1) of your proposed amendment states that: "Beginning ninety (90) days after passage of this amendment a local option election may be called for the electorate of a city or county to accept or reject the operation of bingo and raffles by non-profit organizations incorporated in this state." (Emphasis supplied). An initial question arises as to whether the words "by nonprofit organizations" modify both bingo and raffles. That is, an ambiguity may exist as to whether your amendment allows the operation of bingo by any entity, but restricts the operation of raffles to "nonprofit organizations incorporated in this state."
 2. Section 1(3) of your proposed amendment provides that:" Such local option elections . . . may be called in a city by resolution adopted by a majority vote of the governing body of the city, or by petition filed with the city clerk signed by qualified electors of the city numbering not less than fifteen percent (15%) of the votes cast in the city for the office of Governor in the last general election in which the office appeared on the ballot, or in a county by resolution adopted by a majority vote of the quorum court at any annual or special session thereof, or in a county by petition filed with the county clerk signed by qualified electors of the county numbering not less than fifteen percent (15%) of the votes cast in the county for the office of Governor in the last general election in which the office appeared on the ballot." At least three ambiguities arise from this language. First, a question arises as to whether the calling of an election after a petition of the electorate is mandatory or discretionary with local officials. Your proposed amendment states that "local option elections . . . may be called" upon resolution of the governing body or by petition of the electorate. (Emphasis supplied). Although it may appear clear that a governing body passing such a resolution would thereafter call the election in question, your language is ambiguous as to whether the governing body is required to call such an election upon petition of the people, or whether in its discretion, the governing body may refuse to do so even after a compliant petition. The word "may" in this regard is ordinarily construed as permissive rather than mandatory. Second, your proposed amendment requires the resolution of the governing body of a city to be adopted by "majority vote of the governing body." An ambiguity may arise as to whether the use and insertion of this "majority vote of the governing body" language differs from existing state law for the adoption of resolutions by city councils. That law requires a "majority of a whole number of members elected to the council. . . ." See A.C.A. § 14-55-203(b). The same ambiguity can be cited with reference to your language concerning a county resolution. See A.C.A. § 14-14-913(d). Third, an ambiguity arises from your use of the language "at any annual or special session [of the quorum court.]" I am uncertain as to the origin or meaning of this language with regard to the quorum court. See A.C.A. § 14-14-904
(requiring the quorum court to assemble each calendar month unless more frequent meetings are provided by ordinance).
 3. Section 1(4) of your proposed amendment states that: "If the voters of a city or county have approved the operation of bingo and raffles . . . or gambling . . . pursuant to a local option election the state may immediately permit or license the operation of bingo and raffles or gambling, as applicable." Again, an ambiguity arises as to whether state officials must permit and license the activities described, or whether such officials are invested with discretion to refuse to license or permit such activities, notwithstanding a favorable result in a local option election. Ambiguities also arise as to which state officials are charged with the duties or discretion to license such activities. If these facts are left to the enactment of legislation by the General Assembly, that fact should be made clear to the voters.
 4. Section 1(5) of your proposed amendment states that: "All matters concerning the local option election not specifically provided herein shall be in accordance with the initiative and referendum laws of this state applicable to cities and counties, respectively." Although the initiative and referendum procedure for county measures is comprehensively detailed in state law (see A.C.A. §§ 14-14-914 to -919), there is no comprehensive state law setting the procedure in municipalities. Amendment 7 merely provides in this regard that "[m]unicipalities may provide for the exercise of the initiative and referendum as to their legal legislation." An ambiguity therefore arises as to whether your amendment excludes the operation of local ordinances setting the procedure for initiative measures in cities.
 5. Section 2(1)(c) of your amendment, which defines "gambling," states that the definition shall "exclude the operation of a lottery, bingo and raffles." The insertion (or retention) of the word "lottery" in this sentence leads to an ambiguity. I appreciate that in your former submissions you included provisions for a state lottery and the word "lottery" was therefore a defined term in those previous submissions. Your current submission does not define the term "lottery." Excluding the concept of a "lottery" from the definition of "gambling" in this submission leads to an ambiguity in that it could be construed to exclude any form of gambling that meets the common law definition of a "lottery" (i.e., any activity that involves consideration, a chance to win a prize and is controlled by chance alone). This point must be clarified before I can certify a ballot title for your measure.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General
MB:cyh